**AFRO-AMERICAN LIFE INS. CO., et al v.
CENTRAL LIFE INS. CO. OF FLORIDA, et al.**

Circuit Court, Duval County.

July 6, 1953.

Jennings, Watts, Clarke & Hamilton, Jacksonville, for plaintiffs.

Hampton, Bull & Crom, Tampa, for defendants.

EDWIN L. JONES, Circuit Judge.

This cause came on to be heard on a motion for summary final decree filed by the defendants on March 20, 1953 and on a similar motion filed by the plaintiffs on April 6, 1953. The court has heard the arguments of counsel for all the parties and has considered the memoranda of authorities submitted by the parties.

Plaintiffs instituted this suit for a declaratory decree and other relief by bill of complaint filed April 1, 1952. Plaintiffs are the Afro-American Life Ins. Co., a Florida corporation engaged in the life insurance business (hereinafter referred to as "Afro-American"), and various individuals.

Some of the individual plaintiffs are stockholders in the defendant Central Life Ins. Co. of Florida, a Florida corporation likewise engaged in the life insurance business (hereinafter referred to as "Central") who still hold legal, beneficial and record title to their stock, while other individual plaintiffs are persons who are still recorded as stockholders on Central's books but who have sold and transferred their shares of stock in Central to Afro-American.

The defendants are the Central Life Ins. Co. of Florida and various individual stockholders thereof who were made defendants

individually and as representatives of the class of which they are members, namely, all the stockholders of Central (other than those who are parties plaintiff).

Plaintiffs allege in their bill that Afro-American has purchased from stockholders of record for good and valuable consideration 856 1/6 of the outstanding 4,000 shares of the capital stock of Central and that Central has wrongfully refused to record the transferred certificates on its books and to issue new stock certificates to Afro-American—thereby refusing to recognize Afro-American as the legal, beneficial and record owner in the place of the stockholders of record from whom the shares were purchased.

Plaintiffs further allege that at all times material Afro-American under its charter, as amended, was expressly authorized and empowered to purchase, own and hold stocks of any corporation and while the owner and holder thereof to exercise all the rights, powers and privileges of ownership. Plaintiffs charge that the actions of Central were wrongful, imposed illegal restraints on the sale and transferability of the plaintiffs' stock in Central, depreciated the value, marketability and free alienability of their stock and wrongfully deprived them of their vested rights as stockholders, and of their property without due process of law.

Plaintiffs seek a declaratory decree with respect to the rights, status and equitable and legal relations of the plaintiffs and other stockholders, and a decree requiring Central to record the stock transfers on its books and to issue new certificates of stock in Central in exchange for the transferred certificates.

In their answer defendants deny that Afro-American under its original charter or any legal amendment thereof was legally authorized and empowered to purchase, own and hold shares of stock of other corporations, specifically of the defendant Central. Defendants deny that Afro-American is the legal holder and owner of 856 1/6 shares of Central's stock, allege that if any such shares were purchased by Afro-American such purchases were illegal, ultra vires and void. Defendants charge that neither the statutes of Florida under which Afro-American was chartered nor its original letters patent or any legal amendment thereof allowed or empowered it to purchase Central's capital stock.

The crux of this case, in the opinion of the court, is whether Afro-American under its charter as amended was lawfully authorized to purchase, own and hold stock in other corporations such as the defendant Central. Afro-American was incorporated by letters patent issued on March 4, 1901. On November 25, 1921 letters

patent were issued approving various amendments and additions to its charter. One of these dealt with the "general nature of the business or businesses to be engaged in or transacted by the corporation" and specifically provided—

> To purchase, own, sell and dispose of, mortgage, lease and encumber lands, the products thereof, and properties, real and personal of every kind and description whatsoever, to subscribe for, purchase, receive, own, issue, hold and underwrite for investment, or otherwise sell, dispose of, mortgage, sublet, pledge, hire, lease, or convey wherever possible and lawful, any stocks, shares, bonds, securities, notes, warehouse receipts or other obligations or property of any kind either of a person or persons, this or any other corporation or firm, association or company, and while the owner or holder thereof, to exercise all the rights, powers and privileges of ownership thereof, to represent the same and exercise any voting power thereof . . . to make contracts, covenants and agreements and obligations of any kind whatsoever for the furtherance of its purposes and business, on such terms as may be authorized by the company . . . to invest its funds in such real and personal property as it may deem desirable . . . and generally to exercise such powers as may be incident or convenient to the purpose or business of the corporation; and to have, exercise and enjoy all the rights, powers and privileges incident to corporations organized and existing under and by virtue of the laws of the State of Florida;

There can be no doubt that the charter provisions above quoted, on their face, give to Afro-American full and broad authority to purchase, own and hold stock in any other corporation whatsoever (including Central) and while such owner to exercise all the rights and privileges of ownership including the right to voting power. But defendants urge that the charter amendment must be read in the light of the statutes and that the statutes of this state in force on November 25, 1921 did not expressly authorize one corporation to purchase stock in another and that for that reason Afro-American's charter amendment of that date was illegal in that neither the governor nor the secretary of state had authority to grant to it the right to purchase stock in another corporation.

The court recognizes that a corporation's charter consists of its articles of incorporation or letters patent taken in connection with the general law under which the articles or letters were granted or amended. While a corporation may not clothe itself with a power or object merely by naming it in its articles of incorporation and the general law as well as the articles must determine whether a corporate object or business is authorized or whether a particular power exists, the court is of the opinion that the amendment to Afro-American's charter of November 25, 1951 was legal and valid in all respects under the general law and that under such law and charter amendment Afro-American had and has the power to purchase, own and hold stock in other corporations including the defendant Central.

The corporation law in force in 1921 and here applicable is found in sections 4045, et seq., Revised General Statutes 1920 (now contained in chapters 610 and 611, Florida Statutes 1951). Such was the general law authorizing the formation of corporations of all kinds and it did not specify a limited number of objects or purposes for which corporations could be organized, but specifically provided that any three or more persons could become incorporated "for the transaction of any lawful business," that is, for any lawful objects and purposes.

Section 4050 required each charter to set forth the "general nature of the business or businesses to be transacted," thereby recognizing that corporations could lawfully be organized to engage in more than one business. Under section 4052, if the governor found the charter to be "for an *object* authorized by law," he was directed to issue letters patent incorporating the subscribers "for the *purposes* and upon the terms named in the charter." Section 4087 authorized the governor to approve amendments to charters, if he found the same to be "in accord with the purposes of the charter." It is true, as contended by the defendants, that neither section 2121, Revised Statutes of Florida 1892, nor section 4047, Revised General Statutes 1920, expressly or by specific terms authorized corporations to purchase and own stock in other corporations. But these sections merely set forth the *inherent powers* which all corporations enjoy simply by virtue of their existence—they do not purport to limit or restrict the lawful objects or purposes or businesses for which corporations could be organized.

The business of every life insurance company is necessarily two-fold in nature, first, the writing of insurance policies and the collection of premiums thereon, and second, the investment of its funds. Afro-American's charter, as amended in 1921, expressly covered both businesses—its objects and purposes were set forth in detail and specified that the company should engage in the two-fold business of— (1) the writing of insurance contracts, and— (2) in the business of investing its funds in all types of real and personal property including the purchase and ownership of stocks, bonds and other securities of every kind, including those issued by any other corporation.

The purchasing, owning, holding and investing in stocks of other corporations is a lawful business, object and purpose for a corporation. Since corporations could be organized under the applicable law (section 4049, Revised General Statutes 1920) for the purpose of transacting any "lawful business," an insurance corporation such as Afro-American could be legally formed under the 1920

general corporation law (and its charter could be legally amended thereunder) for the express *purpose, object and business,* among others, of purchasing, owning, holding and investing in stocks of other corporations.

Every corporation under section 4047, Revised General Statutes 1920, being the section setting forth the inherent powers of all corporations, has the power—

> Where special provision is not made by law or otherwise, to hold, buy, convey, or mortgage such personal or real estate as the purposes of the corporation shall require.

Where a corporation has been organized and chartered, as was Afro-American, for the express object, purpose and business of investing funds and of purchasing, owning and holding bonds, stocks and securities of other corporations, the inherent power contained in section 4047 last quoted above gives such a corporation full authority and power to accomplish its purposes—that is, it has *power* to purchase and hold property (stocks, bonds, etc.) as its investment *purposes,* object and business contemplate.

In ruling on the motions for summary final decree filed by all parties the court has recognized the principle that each party by filing such motion must be deemed to have admitted for the purpose of the motion all facts well pleaded by the opposing party.

The court accordingly finds and declares that—

There is no genuine issue as to any material fact, the equities of the cause are with the plaintiffs and against the defendants, and the plaintiffs are entitled to a final decree as a matter of law.

Plaintiffs are entitled to the court's declaratory decree and construction and declaration of plaintiffs' "rights, status and equitable and legal relations" (in the language of section 87.02, Florida Statutes 1951) and to the enforcement thereof by this court as herein provided.

At all times material the charter, by-laws and stock certificates of Central and the laws of Florida under which Central was incorporated contained no provisions whatsoever, express or implied, either restricting the ownership of outstanding stock in Central to natural persons or prohibiting Afro-American from acquiring, owning or holding such stock, or restricting in any manner the right of stockholders in Central freely to dispose of and alienate their shares of stock to any person or corporation whatsoever, or denying to stockholders who should sell their shares to a corporation or to any corporation purchasing such stock the right to have the stock transferred and registered upon the books of

Central in the name of the purchasing corporation, or restricting in any manner the right of stockholders in Central, whether natural or corporate, to engage in any lawful business whatsoever, or depriving such stockholders in Central, as a condition precedent to their right to vote their shares or to secure the transfer thereof on the books of Central, of the right to engage in any lawful business.

Afro-American's charter was validly and legally amended by letters patent issued November 25, 1921 and as so amended is valid and legal in all respects. Afro-American under its charter as so amended and at all times material has been and is expressly and legally authorized and empowered to subscribe for, purchase, receive, own and hold stocks and shares of any other corporation, including the shares of stock of the defendant Central, and while the owner and holder thereof to exercise all the rights, powers and privileges of ownership thereof and to represent the same and exercise any voting power thereof.

On or about March 18, 1952 Afro-American presented and tendered surrender of its 856 1/6 shares of stock, assigned and endorsed, to the defendant Central at the latter's office in Tampa and at that time and place requested Central to record the transfer of the shares and certificates on its books and records and to issue in lieu thereof new certificates of stock evidencing such transfers. At that time and place Central wrongfully refused to accept for recording and transfer upon its books and records the certificates of stock so presented and tendered and wrongfully refused to record such transfers and to issue new certificates of stock evidencing such transfers.

The court being fully advised in the premises, upon consideration thereof, it is ordered, adjudged and decreed as follows—

Defendants' motion for summary final decree filed March 20, 1953 is denied and plaintiffs' motion for summary final decree filed April 6, 1953 is granted.

Plaintiff Afro-American is hereby authorized to surrender the certificates of stock in Central purchased by it from stockholders in Central, assigned and endorsed by the sellers thereof, to the defendant Central and upon such surrender the defendant Central and the officers thereof are hereby ordered and directed forthwith to record the transfers of the shares and certificates on the appropriate books and records of Central evidencing such transfers, in exchange for and in lieu of the certificates of stock so to be surrendered.

With respect to the shares of stock in Central purchased and owned by Afro-American the defendants are hereby ordered and directed to recognize Afro-American to the extent and number of shares purchased and owned by it as a valid and bona fide stockholder in all respects in Central and to accord and make effective to Afro-American all the rights, powers and privileges of ownership thereof and inherent in and incident to such ownership including the right to represent the same and to exercise any and all voting power thereof.